THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

TODD ASHBACH,

Defendant.

CASE NO. CR17-0026-JCC

ORDER ON MOTION TO SUPPRESS

This matter comes before the Court on Defendant Todd Ashbach's motion to suppress (Dkt. No. 30). Having thoroughly considered the parties' briefing and the relevant record, the Court DENIES the motion for the reasons explained herein.

## I. BACKGROUND

Ashbach is charged with one count each of Felon in Possession of a Firearm; Possession of an Unregistered Device, a silencer; Possession of Heroin with Intent to Distribute; and Possession of Methamphetamine with Intent to Distribute. (Dkt. No. 15 at 1–3.) Police seized all of the items while searching Ashbach's motel room and two vehicles in his possession. (Dkt. Nos. 31 at 5, 35 at 5–6.) Police conducted the searches after obtaining a search warrant. (Dkt. No. 32.) Officer Justin Gann of the Lynwood Police Department requested the warrant based upon probable cause evidence the officer collected the day prior that the weapons and drugs would be located in Ashbach's vehicles and the motel room. (*Id.*)

Officer Gann was on patrol the day prior for the Special Operations Section of the Lynwood Police Department. (Dkt. No. 31 at 1–2.) He noticed a Volkswagen parked in a handicapped spot at a motel without a visible handicap placard. (*Id*.) Upon the officer's inquiry, motel staff indicated that the vehicle belonged to someone in Ashbach's room, and there had been significant foot traffic to and from the room throughout the day. (*Id*. at 2.) Officer Gann knocked on the door, and an unidentified female, later identified as J.E., answered. (*Id*.) She said the car was hers and she would move it. (*Id.*) J.E. and the officer proceeded to the parking lot, where the officer observed Ashbach come downstairs and place a bag into a BMW. (*Id*.) Ashbach then approach J.E. and the officer, who were still discussing the car and J.E.'s identity. (*Id*.) The officer asked Ashbach and J.E. to produce some identification relating to them and/or the illegally parked Volkswagen. (*Id*. at 3.) Ashbach produced a fake I.D. (*Id*.) Based on the fake I.D., the officer arrested Ashbach. (*Id*. at 4.) During a resulting search incident to Ashbach's arrest, the officer recovered $9,000 in cash and a bank debit card with Ashbach's true name on it. (*Id*. at 4.)

Ashbach and J.E. later consented to a search of Ashbach's room, signing a statement to that effect. (*Id*.) During the search, Officer Gann, along with assisting officers, recovered drug paraphernalia, body armor, and a jacket bearing a Seattle police badge. (*Id*. at 5.) They also recovered a small amount of drugs from J.E.'s purse. (*Id*.) Based upon this evidence, Officer Gann arrested Ashbach's companion. (*Id*.) J.E. told officers after she arrived at the station that they missed a handgun with a silencer and armor piercing ammunition in the motel room. (*Id*.) She also indicated there were guns in the Volkswagen and a large quantity of drugs in the BMW. (*Id*.) Officer Gann impounded the vehicles and instructed the motel to secure the room until he could acquire a search warrant. (Dkt. No. 32 at 9.) Another officer deployed a drug-sniffing dog on the impounded vehicles. (*Id*.) The dog detected drugs on both vehicles. (*Id*.)

Based upon the evidence described above, Officer Gann sought a warrant to search the impounded vehicles and to reenter and search the motel room. (Dkt. No. 32) (copy of search

warrant). The resulting search led to the discovery of three handguns, a silencer, a sawed-off shotgun, fully loaded ammunition magazines, armor piercing bullets, 900 grams of heroin and 498 grams of methamphetamine. (Dkt. No. 35 at 5–6.)

Ashbach moves to suppress the evidence on the basis that they were the fruits of an unlawful *Terry* stop and/or supported by a search warrant issued without probable cause. (Dkt. No. 31 at 8–9.) He also requests an evidentiary hearing on the matter. (Dkt. No. 30.)[1]

## II. DISCUSSION

### A. Search Incident to Arrest

Ashbach asserts that his arrest was unlawful because it was based on an impermissible *Terry* stop. (*Id*. at 6.) He claims the *Terry* stop was impermissible because Officer Gann lacked reasonable suspicion to detain him at the time the stop commenced and that his detention lasted too long. (*Id*. at 6–7.) Under *Terry*, an officer has reasonable suspicion supporting a brief investigatory detention when "specific, articulable facts . . . together with rational inferences from those facts" warrant detention. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Further, the detention period cannot extend beyond the time necessary to investigate whether a crime has been committed. *Florida v. Royer*, 460 U.S. 491, 500 (1983).

Both of Ashbach's assertions suffer from the same logical infirmity—that Ashbach's detention commenced when the officer first knocked on his motel room door. (Dkt. No. 31 at 2.) Detention begins when "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) (internal quotation omitted). Here, a reasonable person would conclude that detention occurred much later than when the officer first knocked on Ashbach's door.

By Ashbach's own admission, after Officer Gann knocked on his door, the officer followed J.E. into the hall to discuss the car situation. (Dkt. No. 31 at 2.) At some point later,

---

[1] Ashbach only requests oral argument in his motion to suppress. (*Id*.) The Court later clarified this to mean an evidentiary hearing.

Ashbach stepped out of the room, first encountering the officer while he was speaking with J.E. about the car. (*Id.*) After briefly participating in the discussion, Ashbach left. (*Id.*) He went to his BMW and placed a bag into it. (*Id.*) Ashbach again briefly spoke with the officer after doing so. (*Id.* at 3.) Again, Ashbach left. (*Id.*) He went to his room to produce the "paperwork or ID's about themselves or the vehicle" that the officer requested. (*Id.*)[2] After handing the officer his identification, Ashbach left again, heading initially to a soda machine and when he found that it was not working, to the motel lobby. (*Id.* at 3.)

Officer Gann suspected the identification was fake. (*Id.*) It could easily be torn, the bar code was misaligned, and the graphics were not fully see through. (Dkt. No. 35 at 3). Furthermore, the physical description did not match Ashbach. (Dkt. No. 31 at 3.) The officer sought out Ashbach. (*Id.*) He found him in the motel lobby, and instructed him to "take a seat" while he continued to investigate the matter. (*Id.*) This is the point where a reasonable person would believe he was being detained, as the officer commanded him to stay put. Further, at that point, detention was lawful. Officer Gann had reasonable suspicion that Ashbach had committed a crime. *See U.S. v. Hensley*, 469 U.S. 221, 226 (1985) (describing reasonable suspicion); Wash. Rev. Code § 66.20.200 (possession of fake identification is a misdemeanor); Wash. Rev. Code. § 46.61.020 (giving a false name to an officer while "in charge" of a vehicle is a misdemeanor). Then, once Officer Gann confirmed with dispatch that Ashbach's identification was fake, he arrested him. (Dkt. No. 31 at 3.) The officer had probable cause to do so. *See U.S. v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). As a result, the subsequent search incident to arrest was also lawful. *See U.S. v. Tarazon*, 989 F.2d 1045, 1051 (9th Cir. 1993).

The Court DENIES Ashbach's motion to suppress evidence collected during the search incident to his arrest.

//

---

[2] A request for one's identification does not transform a consensual encounter into detention. *I.N.S.*, 466 U.S. at 216.

### B. First Search of Room

Ashbach asserts that because his detention and later arrest were unlawful, his consent to search his room was ineffective. (Dkt. No. 31 at 8.) Under the "fruits of the poisonous tree" doctrine, evidence obtained subsequent to a Fourth Amendment violation is tainted by the violation and inadmissible, despite voluntary consent, unless the evidence is "purged of the primary taint." *Wong Sun v. U.S.*, 371 U.S. 471, 488 (1963). Ashbach's detention and later arrest were lawful, so there is no constitutional violation requiring suppression. Further, Ashbach does not otherwise assert that the consent form he signed was ineffective. (Dkt. No. 31 at 4, 8.)

The Court DENIES Ashbach's motion to suppress evidence collected during the first search of his room.

### C. Seizure of Cars

Ashbach asserts that, without a warrant, Officer Gann could not have lawfully impounded his cars. (*Id*. at 8.) Therefore, the evidence gathered from the subsequent dog sniff must be suppressed. (*Id*.) The Court disagrees. So long as Officer Gann had probable cause that the cars contained illegal contraband, he could immediately search them, or seize them for later search. *Chambers v. Maroney*, 399 U.S. 42, 51–52 (1970). No warrant was required. *Id*. Further, even if a warrant had been required, a dog sniff of a vehicle's exterior is not a search. *Illinois v. Cabellas*, 543 U.S. 405, 408-09 (2005).

Ashbach contends Officer Gann lacked probable cause that the cars contained illegal contraband because the officer relied on statements from J.E., whom the officer had already determined was not credible. (Dkt. No. 31 at 9.) Again, the Court disagrees. While Officer Gann determined J.E. had not been truthful about her identity, she had compelling reasons to lie because of her outstanding warrants. (*Id*. at 5.) She had no compelling reason to lie about what may be in the cars. Doing so would not serve her interests. Had the officers located contraband in the Volkswagen, she would have been potentially subject to criminal charges based on what

they found. Had they not, she would have been subject to criminal charges for providing false information to an officer. Furthermore, Officer Gann had corroborating information. He observed Ashbach place a bag into the BMW and found contraband in Ashbach's motel room. (*Id*. at 2.)

The Court DENIES Ashbach's related motion to suppress the evidence obtained from the seizure and subsequent dog sniff of the vehicles.

### D. Search of Cars and Second Search of Room

Finally, Ashbach asserts that the warrant supporting the search of his cars and the second search of his room was not supported by probable cause. (Dkt. No. 31. at 9.) He claims that all resulting evidence from those searches should be suppressed. (*Id*.) At issue is whether "the magistrate had a substantial basis for concluding that the affidavit in support of the warrant established probable cause." *U.S. v. Angulo-Lopez*, 791 F.2d 1394, 1396 (9th Cir. 1986).

According to Ashbach, Officer Gann's affidavit contained evidence resulting from impermissible searches. (Dkt. No. 31 at 9–11.) Once that evidence is excised, all that is left are unreliable statements from J.E. that that drugs and guns would be found in the vehicles and room. (*Id*. at 10–11.) As the Court has already noted, none of the evidence gathered in the earlier searches was impermissibly obtained, so it was properly considered by the magistrate. Nor does the Court view the information from J.E. as unreliable.

When considering informant information included in an affidavit for a warrant, the informant's reliability must be assessed based on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). While J.E. did initially provide a false identity to Officer Gann, based upon the totality of circumstances, the informant appeared reliable. First, her statements were corroborated by $9,000 in cash found on Ashbach, along with body armor, an officer's badge, and drug paraphernalia found during the initial consent search of the room. (Dkt. Nos. 31 at 4–5, 35 at 4–5.) Officer Gann's observation that Ashbach placed a bag into his vehicle (Dkt. No. 31 at 2) further corroborates her statements. Corroboration is the most powerful

method to confirm veracity. *U.S. v. Bishop*, 264 F.3d 919, 925 (9th Cir. 2001). Second, J.E.'s statements were against her penal interests. She was closely associated with Ashbach, sharing a motel room and initially claiming ownership of the Volkswagen. (Dkt. No. 31 at 2.) Any contraband officers located could potentially also be used against her. Conversely, if officers determined she was lying, she exposed herself to the additional crime of providing false information. *See Angulo-Lopez,* 791 F.2d at 1397 (veracity may also be established by statements against penal interest). Finally, she came by the information through first-hand knowledge. *See Bishop*, 264 F.3d at 925 (first-hand knowledge is more compelling than hearsay).

The magistrate had a substantial basis for concluding that Officer Gann's affidavit established probable cause to search the vehicles and his room for drugs and guns. The Court DENIES Ashbach's motion to suppress the evidence gathered from the search of the vehicles and the second search of his room.

### E. Evidentiary Hearing

"An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *U.S. v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000). The only disputed fact the Court can glean from Ashbach's motion is whether Officer Gann's initial contact was pretextual. (Dkt. No. 31 at 7) (describing Ashbach's arrest as "predicated on a lie"). A minor infraction may serve as pretext for a *Terry* stop, depending on the "potential risk to public safety associated with the nature of the offense." *U.S. v. Grigg*, 498 F.3d 1070, 1083 (9th Cir. 2007). While knowledge that Ashbach parked a car in a handicapped spot without the required placard likely would not satisfy this standard, once this knowledge is coupled with the knowledge the officer acquired from motel staff regarding the significant foot traffic to and from Ashbach's room (Dkt. No. 31 at 2), the standard may have been met. Regardless, the *Terry* stop began long after the officer first approached Ashbach's motel room. Therefore, whether the officer's initial contact was a pretext is not material to the lawfulness of Ashbach's *Terry* stop

1 and resulting arrest. Absent other contested facts, the Court sees no basis for an evidentiary
2 hearing.

3     To the extent Ashbach requests an evidentiary hearing, that request is DENIED.

4 **III.  CONCLUSION**

5     For the foregoing reasons, Ashbach's motion to suppress (Dkt. No. 30) is DENIED.

6     DATED this 5th day of October 2017.

*(signature)*

John C. Coughenour
UNITED STATES DISTRICT JUDGE
TRICT JUDGE